Estate of John C. Hagen, Jr., Deceased, Seattle First National Bank, Executor, and Mary Hagen, Petitioners v. Commissioner. Fred J. Hagen and Floy J. Hagen, Petitioners v. Commissioner.
Estate of Hagen v. Commissioner
Docket Nos. 1890-66, 1891-66.
United States Tax Court
T.C. Memo 1969-59; 1969 Tax Ct. Memo LEXIS 237; 28 T.C.M. (CCH) 341; T.C.M. (RIA) 69059; March 25, 1969, Filed *237 Allen A. Bowden, 1103 Norton Bldg., 801 Second Ave., Seattle, Wash., for the petitioners. Eugene H. Flood, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: These consolidated cases involve deficiencies determined by respondent for the year 1964 in the income taxes of John C. Hagen and wife, Mary Hagen, in the amount of $5,291.06, and of Fred J. Hagen and wife, Floy J. Hagen, in the amount of $5,142.75. The only issue presented is whether a payment of $475,000 in full discharge of an indebtedness in the principal amount of $455,000 and accrued interest in the amount of $99,513.24 is to be allocated proportionately to principal and interest, as determined by respondent, or is to be allocated first to principal and the remainder to interest, as contended by petitioners. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. John C. Hagen, Jr., and his wife, Mary Hagen, were residents of Seattle, Washington, and timely filed a joint Federal income tax return for the year 1964 with the district director of internal revenue at Tacoma, Washington. John C. Hagen, Jr., died March 18, 1966, subsequent *238 to the issuance of the notice of deficiency herein, and the Seattle First National Bank, with its principal office in Seattle, Washington, duly qualified as executor of his estate. Mary continued to reside in Seattle at the time her petition herein was filed. 342 Fred J. Hagen and his wife, Floy J. Hagen, were residents of Seattle, Washington, at the time their petition herein was filed. They timely filed a joint Federal income tax return for the year 1964 with the district director of internal revenue at Tacoma, Washington. In a document labeled "Agreement of Doric Creditors," dated September 19, 1962, The Doric Company, a Washington corporation, acknowledged and agreed to pay, at the rate of $10,000 or more per month, certain obligations totalling $735,000, plus 7 percent interest from July 15, 1962. The obligations referred to consisted of four prior obligations, then in default, owed by Furniture Leasing Corporation and Cirod, Inc., subsidiaries of The Doric Company, and guaranteed by The Doric Company and its principal stockholders, Floyd Clodfelter and Ray Lemery, described in the "Agreement of Doric Creditors" as follows: (2) All of the obligations owed to Hagen-Trustee, *239 the Hagens, Nancy Ann Hagen, and J. C. Hagen, Sr., guaranteed by Doric, consist of all amounts owed to them by the following corporations (including interest to July 15, 1962): (a) Balance owing in the amount of $82,092.67 on that certain promissory note dated April 1, 1962, in the principal amount of $270,000.00, executed by Furniture Leasing Corporation, and payable to Robert M. Hagen, Patricia Hagen, J. R. Bennett, Mary Jane Bennett, Joseph J. Pfeiffer, Mary E. Pfeiffer, John C. Hagen, Jr., William P. Hagen and Fred J. Hagen. (b) Balance owing by Cirod, Inc., a Washington corporation, in the amount of $530,407.33 to J. C. Hagen, Jr., Trustee (successor to Crystal Land Company), under that certain agreement entitled "Grosvenor Agreement," dated March 2, 1961, between Cirod, Inc., and Crystal Land Company. (c) Balance owing by Cirod, Inc., a Washington corporation, in the amount of $72,500.00 to J. C. Hagen, Jr., William P. Hagen and Fred J. Hagen, under that certain agreement entitled "Mayflower Option Sale Agreement," executed contemporaneously herewith. (d) Balance owing in the amount of $50,000.00 on that certain promissory note dated December 8, 1958, in the principal *240 amount of $50,000.00, executed by Cirod, Inc., a Washington corporation, to Nancy Ann Hagen. Said agreement further provides: Hagen-Trustee, the Hagens, Nancy Ann Hagen, and J. C. Hagen, Sr., agree to accept from Doric, and Doric agrees to pay on the above obligations, $10,000.00 or more per month to Hagen-Trustee, said payments to be applied first to principal of all obligations listed above and then to interest which has been earned on said obligations. Interest on unpaid balances of principal shall be 7% per annum from July 15, 1962, with unpaid balances of interest being compounded monthly, but in no event shall the total interest paid by Doric under this agreement exceed the interest which would have been due if the monthly payments of $10,000.00 had been applied to interest and then principal at the rate of 7% per annum on unpaid balances. After default, interest shall be 12% per annum on unpaid balances. The monthly payments shall be payable on the 15th day of each month commencing on November 15, 1962; provided, however, that the entire balance of principal and interest remaining unpaid on July 15, 1967, shall be paid in full on that date. Any provision providing for interest *241 in any existing agreement is hereby succeeded by the 7% interest rate provided for herein. Provided further, that if Doric should default in any of the said payments and remain in default for more than 30 days, or shall have made an assignment for the benefit of its creditors, or have been declared or adjudicated bankrupt by a court having jurisdiction in matters of bankruptcy, or if a receiver be appointed for Doric, or if any proceeding should be brought to foreclose any lien which is prior to that held by the Hagens, all amounts owing on obligations listed in this Section (2) shall, at the option of Hagen-Trustee, become immediately due and payable, and Hagen-Trustee may collect the full amount due from the original debtor corporation, or its guarantors, or Doric, or all of them, and each shall be jointly and severally liable. Hagen-Trustee shall apply amounts received from the monthly payments provided herein to the discharge of the obligations in the order they are listed above in this Section (2). All principal payments shall be applied on prior obligations before any amounts are applied to succeeding obligations. * * * (7) This agreement does not constitute a substitution, *242 discharge, satisfaction or release of any mortgage, agreement or obligation except as expressly provided herein. * * * The security for this agreement was the stock of Doric Motel Company (Doric Sixth Avenue), a mortgage on the 343 Mayflower, and an assignment of the second mortgage on the Dexter Horton Building owned by the Dexter Horton Company, another subsidiary of The Doric Company. Ray J. Lemery signed the agreement individually and as president, respectively, of The Doric Company, Cirod, Inc., Furniture Leasing Corporation and Doric Motel Company. On November 15, 1962, and July 26, 1963, payments of $10,000 and $270,000, respectively, or $280,000 in the aggregate, were made by obligors of which $94,055.50 was allocated to the September 19, 1962 balance then due on the "Grosvenor Agreement" of $530,407.33, reducing same to $436,351.83. Of the $280,000 payment, $49,476.83 was treated as in partial discharge of an obligation due on account of the note in favor of Nancy Ann Hagen, reducing same to $523.17; $82,092.67 was treated as in complete discharge of the then remaining balance due on the "Mission Hills Furniture Agreement," dated April 1, 1962; $54,375 was treated *243 as in partial discharge of the original $72,500, due under the "Mayflower Option Sale Agreement," reducing same to $18,125. Petitioners and related parties treated the entire $280,000 in payments as in discharge of principal and allocated no amount to interest. Payments herein mentioned, $280,000, reduced the $735,000 obligation to $455,000. In connection with the $270,000 payment mentioned above, J. C. Hagen, Jr., individually and as Successor Trustee to Crystal Land Company, William P. Hagen and Fred J. Hagen, on July 3, 1963, executed a Release Agreement wherein, in contemplation of the $270,000 payment, they released all their interest in the Doric Motel Company stock previously assigned to them as security and the mortgage agreements relating to the property known as Doric Sixth Avenue Motel. The Release Agreement further provided: It is further understood that the $270,000.00 to be received by the Hagens shall be applied on the existing indebtedness owing them as follows: (1) to the payment of all installments of principal now due or to become due the Hagens during the year 1963 under that certain agreement dated September 19, 1962, entitled "Agreement of Doric Creditors, *244 " (2) $5,000.00 on each of the monthly principal payments coming due under said agreement in 1964, and (3) the balance on the final principal payment coming due under said agreement on July 15, 1967. Doric Company, by accepting this Release, evidenced by causing the same to be recorded, agrees to this method of applying said $270,000.00 on the indebtedness owing the Hagens. Upon the sale of the Dexter Horton Building, owned by the Dexter Horton Co., a Washington Corporation, in 1959, the purchaser, Dexter Horton Realty Company, a New York limited partnership, executed two promissory notes secured by a single second mortgage as follows: (a) One note for $567,500 payable September 1. 1959. (b) One note for $1,804,137.74 with 5% interest, payable $3,270.83 monthly commencing July 1, 1959, and $23,310.00 quarterly commencing December 1, 1959, March 1, 1960, June 1, 1960, etc. This note and Collections were assigned to the Seattle-First National Bank for a loan. In addition, was [sic] assigned to the "Hagen Group and Equitable Savings & Loan Association." The proceeds of the disposition of the note (b) above were paid from escrow in December 1964 as follows: J. C. Hagen, Jr., Trustee, and individually
$ 475,000.00
Equitable Savings & Loan Association
343,752.93
Seattle First National Bank 475,216.18
$1,293,969.11
*245 Petitioners, Estate of John C. Hagen, Jr., and Mary Hagen, and petitioners, Fred J. and Floy J. Hagen, held interests of 22.253 percent and 22.253 percent, respectively, in the $455,000 obligation due from Cirod, Inc., and a similar percentage in the unpaid interest due on said indebtedness. On November 30, 1964, petitioners and related parties assigned all their right, title and interest in the principal indebtedness of $455,000, together with unpaid interest thereon, to Consolidated Equities Corporation, a Delaware corporation. [1] In an agreement dated November 17, 1964, relating to the assignment of November 30, 1964 to Consolidated Equities Corporation, The Doric Company and Cirod, Inc., were referred to as "First Parties" and petitioners and their associates were referred to as "Second Parties." A Satisfaction of Mortgage on the Dexter Horton Building was executed by 344 Consolidated Equities Corporation on December 16, 1964. *246 Petitioners herein treated their proportionate share of the $475,000, which did not exceed $455,000, as a payment on the basic obligation and their share of the excess, $20,000, as ordinary interest income. Petitioners, the Estate of John C. Hagen, Jr., and Mary Hagen, in Docket No. 1890-66, returned $4,450.55 as interest income. Petitioners Fred J. and Floy J. Hagen, in Docket No. 1891-66, similarly treated $4,450.55 as interest income. Petitioners, the Estate of John C. Hagen, Jr., and Mary Hagen, treated their aliquot share, $101,250, as in discharge of the interest they held in the $455,000 remaining balance due on the basic obligation referred to above. On a long-term capital gain schedule attached to their 1964 return, said $101,250 was reported as an installment payment from disposition of an option against which no basis was claimed, thus resulting in a reported long-term capital gain of $101,250. Petitioners Fred J. and Floy J. Hagen treated their aliquot share, $101,250, as in discharge of the interest they held in the $455,000 remaining balance due on the basic obligation referred to above. On a long-term capital gain schedule attached to their 1964 return, said $101,250 *247 was reported as an installment payment from disposition of an option against which no basis was claimed, thus resulting in a reported long-term capital gain of $101,250. In the statutory notice the Commissioner determined that at the time the principal obligation of $455,000 was disposed of, the obligors were indebted to petitioners and other holders thereof for unpaid interest in the amount of $99,513.24. Thus, at the time of disposition, the obligors were indebted to petitioners and their associates for an aggregate of $554,513.24. The Commissioner thereupon allocated the $475,000 payment to interest and principal in the respective amounts of $85,243.75 and $389,756.25. Under said allocation, it was determined that petitioners, the Estate of John C. Hagen, Jr. and Mary Hagen, received interest income of $18,969.08 in lieu of $4,450.55 reported, or an increase in interest income of $14,518.53. The Commissioner proposed a contra adjustment reducing long-term capital gain reported as realized on disposition of the option by $7,259.26 (50 percent of $14,518.53). Identical adjustments increasing interest income by $14,518.53 and decreasing long-term capital gain by 50 percent thereof, *248 or $7,259.26, were proposed by the Commissioner in the statutory notice issued to petitioners Fred J. and Floy J. Hagen for the year 1964. In 1964, pursuant to a revised "Plan of Reorganization" filed by The Doric Company, a new corporation known as "Motel Development Corporation" was formed which took over substantially all of the assets and liabilities of The Doric Company and its subsidiaries. The original capital structure and stockholdings of Motel Development Corporation are not shown. Its Articles of Incorporation listed seven directors, including R. J. Lemery. On December 7, 1964, R. J. Lemery, president of Motel Development Corporation, submitted a proposed agenda to be discussed at a special meeting of its Board of Directors to be held on December 9, 1964, including the sale of the Dexter Horton second mortgage to Transcontinental Investing Corporation, a New York investment company, the sale of the Waldorf and Mayflower hotel properties, the sale of capital stock of the corporation equal to the capital stock then outstanding to Dinkler Management Corporation, and changing the name of Motel Development Corporation to Consolidated Equities Corporation. The sale of the *249 "Dexter Horton Second Mortgage Note" was recommended as a method of obtaining funds with which to discharge, among others, the "Hagen Obligation," stated to be $550,000, which could be satisfied for $475,000. Previously thereto, in an agreement dated November 25, 1964, Motel Development Corporation, referred to as the owner, agreed to sell the Dexter Horton second mortgage note to Transcontinental Equities Corporation for $1,210,000 to be deposited with the Puget Sound Title Insurance Co. as escrow agent and disbursed by it in accordance with escrow instructions. In another agreement dated November 25, 1964, Motel Development Corporation was referred to as a wholly-owned subsidiary of Consolidated Equities Corporation and Dinkler Management Corporation was referred to as a wholly-owned subsidiary of Transcontinental Investing Corporation. On December 9, 1964, the Board of Directors of Motel Development Corporation approved the sale of the Dexter Horton Second Mortgage Note for $1,210,000, and 345 thereafter 475,000 was disbursed to J. C. Hagen, Jr., Trustee, and individually. Negotiations for the settlement of the "Hagen Obligations" were conducted primarily between J. *250 C. Hagen, Jr., representing the Hagen group, and R. J. Lemery representing the Doric-Motel Development Corporation interests. Fred J. Hagen and William P. Hagen were present and participated in most of the negotiations. The Hagens rejected offers amounting to less than the principal indebtedness ($455,000) and at all times insisted upon full payment of the principal amount. The discussions involved primarily the amount of interest to be paid. The 12 percent rate provided by the agreement of September 19, 1962, in case of default was never insisted upon by the Hagens. A computation dated October 15, 1964, prepared by J. C. Hagen, Jr., indicates they considered not only the 7 percent rate compounded monthly as provided by the agreement of September 19, 1962, but also lesser amounts represented by 7 percent and 5 percent simple rates of interest. Although not set forth in writing at the time, we find as a fact that it was fully understood by all the parties involved that the $475,000 overall payment ultimately agreed upon was intended as and, in fact, represented payment of the principal indebtedness in the amount of $455,000 and $20,000 as interest. Opinion The only issue to be determined *251 is whether a payment of $475,000 in full discharge of an indebtedness in the principal amount of $455,000 and accrued interest thereon in the amount of $99,513.24 is to be allocated proportionately to principal and interest, or is to be allocated first to principal and the remainder to interest. Respondent's principal contention is that there was no agreement as to the allocation and accordingly that the $475,000 paid in full discharge of the total indebtedness is to be allocated proportionately to principal and interest. Whether there was such an agreement is a question of fact to be determined from all the facts and circumstances. We have carefully considered all of the facts, including the stipulation, the exhibits attached thereto and the oral testimony, and have found as a fact that it was fully understood by all of the parties involved that the $475,000 overall payment ultimately agreed upon was intended as and, in fact, represented payment of the principal indebtedness in the amount of $455,000 and $20,000 as interest. The agreement of September 19, 1962, specifically provided that the payments therein contemplated were to be applied first to principal and then to interest. *252 The release agreement executed July 3, 1963, preceding the $270,000 payment on July 26, 1963, provided that all installment payments then due or to become due were to be applied first to principal. This agreement differed from the agreement of September 19, 1962, only with respect to the order in which the original obligations were to be discharged. The petitioners and related parties treated the $270,000 and previous $10,000 payments as payments in discharge of the principal indebtedness, thus reducing the $735,000 obligation to $455,000. In 1964, pursuant to a plan of reorganization filed by The Doric Company (the exact date not shown), a new corporation known as "Motel Development Corporation" was formed which took over substantially all of the assets and liabilities of The Doric Company and its subsidiaries. Thereafter, because of increasing difficulties in meeting payments on its several obligations, including the obligation due the Hagens, from its cash flow, the Motel Development Corporation took steps to dispose of certain of its assets, including the sale of the second mortgage on the Dexter Horton Building which had been assigned as one of the securities for the Hagen *253 obligation, and also to compromise the Hagen obligation. Extensive negotiations for the settlement of the Hagen obligation were conducted primarily between J. C. Hagen, Jr., representing the Hagen group, and R. J. Lemery, representing the Doric-Motel Development Corporation interests. Petitioner Fred J. Hagen, and William P. Hagen were present and participated in most of the negotiations. The Hagens rejected offers amounting to less than the then principal indebtedness ($455,000) and at all times insisted upon full payment of the principal. Both Fred J. and William P. Hagen testified there was never any agreement to reduce principal and that the discussions related primarily to the amount of interest to be paid. Contrary to respondent's contention, the testimony of R. J. Lemery, who was interested only in the overall amount to be paid, does not dispute, but rather supports the testimony of Fred J. and William P. Hagen. When asked whether there was any understanding on his part as to the allocation of the $475,000 payment, he stated: "From my point of view, 346 I would allocate $455,000 to principal that we owed and our records would then indicate that we would pay $20,000 on interest *254 * * *." Respondent's argument that the Hagens had assigned all their right, title and interest under the agreement of September 19, 1962, and that there was "no agreed allocation of the $475,000 between principal and interest by the parties to the transaction" is without merit. In the first place, Motel Development Corporation was a wholly-owned subsidiary of Consolidated Equities Corporation, to which the assignment was made on November 30, 1964. In the second place, Motel Development Corporation had previously, on November 25, 1964, entered into an agreement for the sale of the Dexter Horton second mortgage note for $1,210,000, to be deposited with an escrow agent and disbursed in accordance with escrow instructions, and the payment to the Hagens was made by the escrow agent out of the proceeds of such sale. Thirdly, the settlement agreement had obviously been consummated prior to such sale and escrow arrangements, and consequently prior to the assignment. Finally, Fred J. Hagen testified the assignment was executed at the request of the obligors and that they were interested only in receiving the amount agreed upon and not who paid it. The reason for the assignment to Consolidated *255 Equities Corporation is not clear. It is to be noted, however, that the Motel Development Corporation was considering changing its name to Consolidated Equities Corporation. In any event, the assignment was after the compromise settlement had been agreed upon and it is of no significance on the issue presented herein. Presumably, the "other valuable considerations" mentioned included the payment of the amount previously agreed upon in settlement of the Hagen obligation. In view of our finding that there was an agreement or understanding as to the allocation of the $475,000 received in full discharge of the overall obligation, it is not necessary to consider respondent's argument or the authorities cited by him as to what would be the situation if there had been no agreement. Sefton v. Commissioner, 292 F. 2d 399 (C.A. 9, 1961), affirming a Memorandum Opinion of this Court (1959-234, filed December 14, 1959), involved a compromise settlement between the taxpayer and his wife for $142,500, of a net money judgment which his wife had obtained against the taxpayer in the amount of $156,675.43, plus costs, $39,533.49 of which judgment was designated therein as interest. *256 The compromise agreement which was negotiated by counsel for the respective parties pending appeal and was signed by both the husband and wife, specifically stated the amount allocated to each item and provided for the payment of $1,201.48 as interest. On his return for 1953, the taxpayer claimed an interest deduction in the amount of $30,320.73. The Commissioner disallowed $29,119.25 of the claimed deduction and allowed only $1,201.48. This Court rejected the taxpayer's contention that the reduction effected by the compromise settlement should be allocated to principal and interest on a proportionate basis and sustained the Commissioner's determination. Both this Court and the Appellate Court held that the terms of the compromise agreement were controlling. Cf. Ishmael S. O'Dell, 26 T.C. 592 (1956); Rev. Rul. 63-57, 1963-1 C.B. 103. We hold that $455,000 of the $475,000 payment is to be allocated to principal and $20,000 to interest. Decisions will be entered for the petitioners. Footnotes
1. The parties, in Item 7 of the Stipulation of Facts, stated the assignment was "for a consideration of $475,000." The document itself, filed as Joint Exhibit 4-D, recites: "FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, * * *."↩